IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
AMERICAN FEDERATION OF STATE, : Case No. 1:12-cv-02237 JPO
COUNTY AND MUNICIPAL EMPLOYEES :
DISTRICT COUNCIL 37 HEALTH & : Honorable J. Paul Oetken
SECURITY PLAN and SERGEANTS :
BENEVOLENT ASSOCIATION HEALTH : ***Oral Argument Requested***
AND WELFARE FUND, :

                      Plaintiffs, :

      - against - :

PFIZER INC., :

                      Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT PFIZER INC.'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL**

Sheila L. Birnbaum  
Katherine Armstrong  
SKADDEN, ARPS, SLATE,  
  MEAGHER & FLOM LLP  
Four Times Square  
New York, NY 10036  
Tel.: (212) 735-2450  
Fax: (917) 777-2450  
Email: Sheila.Birnbaum@skadden.com  
Email: Katherine.Armstrong@skadden.com

John H. Beisner (admitted PHV)  
SKADDEN, ARPS, SLATE,  
  MEAGHER & FLOM LLP  
1440 New York Avenue, N.W.  
Washington, DC 20005  
Tel: (202) 371-7000  
Fax: (202) 393-5760  
Email: John.Beisner@skadden.com

*Counsel for Defendant Pfizer Inc.*

# TABLE OF CONTENTS

                                                                            **Page**

TABLE OF CONTENTS ................................................................................................ i

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL BACKGROUND .................................................................................2

ARGUMENT ..................................................................................................................6

THE INSURERS' MOTION FOR VOLUNTARY DISMISSAL SHOULD BE DENIED .........................................................................................................................6

      A.      Preventing A Ruling On The Pending Dispositive Motion Would Be Highly Prejudicial To Pfizer. ......................................................................6

      B.      The Insurers' Vexatious Forum-Shopping Efforts Should Not Be Condoned. ...........................................................................................................8

      C.      The Insurers Have Not Proffered A Legitimate Justification For Dismissal. .............................................................................................................9

      D.      The Insurers Were Dilatory In Bringing Their Motion. .........................10

      E.      This Action Is Not "In Its Infancy." ..........................................................11

CONCLUSION .............................................................................................................12

Defendant Pfizer Inc. ("Pfizer") submits this memorandum of law in opposition to the motion for voluntary dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) filed by Plaintiffs American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan ("American Federation") and Sergeants Benevolent Association Health & Welfare Fund ("Sergeants," and collectively, the "Insurers").

## PRELIMINARY STATEMENT

The Insurers' motion should be denied for multiple reasons:

*First*, "a party should not be permitted to avoid the prospect of an adverse decision on a dispositive motion by dismissing a claim without prejudice." *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004). Pfizer's Motion for Judgment on the Pleadings is fully briefed and is ripe for ruling. The Insurers offer no legitimate reason why they should be allowed to dodge that motion by dismissing their complaint when they admittedly intend to continue pursuing their claims before another federal court.

*Second*, "a party is not permitted to dismiss merely . . . to seek a more favorable forum." *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999). The Insurers readily acknowledge the proposed dismissal is nothing more than an effort to move the litigation from this forum (which is home turf for both the Insurers and Pfizer) to the Southern District of Illinois (which has no special nexus to either the named parties or the controversy). (*See* Pls.' Mot. at 3 [Doc. 21] ("A similar case against Pfizer . . . is currently pending in the Southern District of Illinois. Third party payors suing Pfizer will litigate there.").) As detailed below, the pending motion is yet another of Plaintiffs' forum-manipulation moves in this litigation that should not be permitted.

*Finally*, all of the factors appropriately considered in deciding a motion for voluntary dismissal favor denial of the Insurers' motion. Most compellingly, the Insurers' only justification for dismissal – judicial efficiency – makes no sense. Nothing could be less efficient than dismissing this case and starting anew in Illinois.

**PROCEDURAL BACKGROUND**

Since its inception, this case has been marred by the Insurers' blatant and improper forum-shopping maneuvers:

**1.       Plaintiffs' First Voluntary Dismissal.**

The Insurers – whose headquarters are both located blocks away from this Court[1] – originally filed this action in the U.S. District Court for the Eastern District of New York on March 7, 2012, along with a separate but similar suit against Bristol-Myers Squibb Co. ("BMS"). Days after receiving the judicial assignment for those cases, the Insurers dismissed them without prejudice. (*See* Notice of Voluntary Dismissal, *American Federation v. Amgen, Inc.*, No. 2:12-1123 (E.D.N.Y. Mar. 27, 2012); Notice of Voluntary Dismissal, *American Federation v. BMS*, No. 12-1124 (E.D.N.Y. Mar. 27, 2012).) That same day, they re-filed both actions in this Court. (*See* Class Action Compl. and Jury Demand [Doc. 1], *American Federation v. Amgen, Inc.*, No. 12 Civ. 2237 (S.D.N.Y. Mar. 27, 2012).)[2] Since Pfizer is headquartered in the Southern District of New York, it raised no objection.

**2.       Plaintiffs' Attempt To Obtain An MDL Proceeding.**

Plaintiffs' counsel very much wanted to litigate this case as part of a consolidated multidistrict litigation proceeding (pursuant to 28 U.S.C. § 1407) encompassing multiple similar actions against Pfizer and other pharmaceutical companies. To that end, Plaintiffs' counsel simultaneously filed seven lawsuits against different pharmaceutical companies in various federal courts around the country. On April 12, 2012, after receiving the judicial assignments in each of those cases, the Insurers filed a petition before the Judicial Panel on Multidistrict Litigation ("JPML") requesting the transfer of all of those actions to a judge in the Northern

---

[1] *See* http://members.sbanyc.org/page/contact-us (last visited 12/26/12) (listing Sergeants' address as 35 Worth Street, New York, NY 10013); www.dc37.net/about/contactus.html (last visited 12/26/12) (listing American Federation's address as 125 Barclay Street, New York, NY 10007).

[2] Plaintiffs' Complaint also originally named Amgen, Inc. ("Amgen") as a Defendant. Plaintiffs voluntarily dismissed their claims against Amgen on October 9, 2012. (Notice of Voluntary Dismissal of Claims Against Amgen, Inc. [Doc. 11].)

District of Illinois. (*See* Pet. for Centralization, MDL No. 2370 (J.P.M.L. Apr. 12, 2012).) Pfizer opposed centralization, arguing, *inter alia*, that the presence of common counsel in each of the seven lawsuits strongly militated against the creation of an MDL proceeding.[3]

Presumably to heighten the prospects for centralization and to add a new potential forum, counsel for the Allied Services Division Welfare Fund ("Allied Services") filed three "copycat" (that is, virtually identical) complaints against each of three pharmaceutical companies sued in the original actions: Pfizer, Merck & Co., Inc. ("Merck"), and Novartis Pharmaceuticals Corp. ("Novartis"). Each new action was filed in the Southern District of Illinois. The Pfizer case was assigned to Chief Judge David Herndon; the Merck and Novartis cases were assigned to different judges in that district.

Allied Services promptly notified the JPML of these new cases, apparently in an effort to bolster their request for an MDL proceeding. (Notice of Related Action [Doc. 68], MDL No. 2370 (J.P.M.L. July 9, 2012).) However, Allied Services did not disclose that its counsel had a long history of collaborating with counsel in the seven original lawsuits, jointly representing third-party payors in numerous cases against pharmaceutical companies. For example, all of those counsel recently appeared on behalf of plaintiffs in an action brought in the Eastern District of New York on behalf of both Allied Services and Sergeants (one of the Insurers here). *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, No. 08-cv-0179 (SLT) (RER), 2012 WL 4336218 (E.D.N.Y. Sept. 17, 2012).[4] Plaintiffs' scheme was

---

[3] *See* Pfizer Inc.'s Mem. of Law in Opp'n to Mot. for Transfer of Actions for Coordinated or Consolidated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, 2, 12 [Doc. 40], MDL No. 2370 (citing cases); *see also In re Sears, Roebuck & Co. Bankr. Debtor Redemption Agreements Litig.*, No. 1389, 2001 WL 34834426, at *1 (J.P.M.L. Jan. 31, 2001) (denying centralization "particularly because only a few federal court actions are pending and the same plaintiffs' counsel is involved in nearly all actions").

[4] The attorneys in this case and attorneys in the Southern District of Illinois action against Pfizer have also appeared as co-counsel in many other third-party payor cases against pharmaceutical industry defendants. *See, e.g., UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010); *In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*, 386 F. App'x 584 (9th Cir. 2010); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 769 F. Supp. 2d 11 (D. Mass. 2011); *In re Wellbutrin XL Antitrust Litig.*, No. 08-2431, 2011 WL 3563734 (E.D. Pa. Aug. 11, 2011); *Prof'l Drug Co. v. Wyeth, Inc.*, Nos. 1:11cv196-LG-RHW, 1:11cv199-LG-RHW, 1:11cv221-LG-RHW, 2011 WL 4397481 (S.D. Miss. Sept. 21, 2011); *In re Neurontin Mktg. & Sales Practices Litig.*, 244 F.R.D. 89 (D. Mass. 2007).

unsuccessful: the JPML denied Plaintiffs' petition for an MDL proceeding. (*See* Order, *In re Prescription Drug Co-Pay Subsidy Antitrust Litig.* [Doc. 75], MDL No. 2370 (J.P.M.L. Aug. 2, 2012).)

### 3. The Southern District Of Illinois Strategy.

After Plaintiffs' MDL petition was rejected, Pfizer, Merck, and Novartis each moved to dismiss the respective *Allied Services* complaints pursuant to the "first-filed" rule,[5] or, in the alternative, to transfer the *Allied Services* cases to the federal courts overseeing the original cases against them.[6] Allied Services vehemently opposed transfer, arguing that ordering a stay would be more appropriate and would promote judicial comity and economy.[7] Further, Allied Services moved to consolidate all three of the Southern District of Illinois actions before Judge Herndon.[8] Judge Herndon ultimately denied the consolidation motion, but granted plaintiff's request to stay the Pfizer case pending the outcome of this action.[9] The judges assigned to the Merck and

---

[5] The first-filed rule "permits the transfer or dismissal of subsequently commenced litigation involving the same parties and the same issues when both suits are pending in federal courts." *Kytel Int'l Grp., Inc. v. Rent-A-Center, Inc.*, 43 F. App'x 420, 422 (2d Cir. 2002); *see also GlycoBioSciences, Inc. v. Nycomed US, Inc.*, No. 11-CV-1280, 2012 WL 540928, at *2 (E.D.N.Y. Feb. 15, 2012) ("The general rule, and the rule in the Second Circuit, is that 'as a principle of sound judicial administration, the first suit should have priority' absent special circumstances.") (citations omitted). In cases seeking certification of overlapping class actions, courts have routinely applied the first-filed rule to dismiss or transfer the second-filed lawsuit. *See, e.g.*, *Worthington v. Bayer Healthcare, LLC*, Nos. 11-2793 (ES), 11-3017 (ES), 11-3299 (ES), 2012 WL 1079716, at *6 (D.N.J. Mar. 30, 2012); *Herrera v. Wells Fargo Bank, N.A.*, No. C 11-1485 SBA, 2011 WL 6141087, at *3 (N.D. Cal. Dec. 9, 2011). Indeed, as discussed more fully below, the judges assigned to the Merck and Novartis copycat cases applied the first-filed rule to transfer those cases to the courts handling the first-filed actions. *See* Mem. & Order at 6 [Doc. 36], *Allied Servs. Div. Welfare Fund v. Merck*, No. 3:12-cv-00766 (S.D. Ill. Nov. 9, 2012); Mem. & Order at 6, 7 [Doc. 34], *Allied Servs. v. Novartis*, No. 3:12-cv-00775 (S.D. Ill. Nov. 28, 2012).

[6] *See* Pfizer Inc.'s Mot. To Dismiss Pl.'s Compl., or, Alternatively, To Transfer This Action to the S.D.N.Y. Pursuant to the First-Filed Rule [Doc. 9], *Allied Servs. Div. Welfare Fund*, No. 3:12-764 (S.D. Ill. Aug. 30, 2012).

[7] *See* Pl.'s Opp'n to Pfizer Inc.'s Mot. To Dismiss Pl.'s Compl. or, Alternatively, To Transfer Action to the S.D.N.Y. Pursuant to the First-Filed Rule [Doc. 36], *Allied Servs.*, No. 3:12-764.

[8] *See* Pl.'s Mot. for Reassignment and Consolidation [Doc. 14], *Allied Servs.*, No. 3:12-764 (S.D. Ill. Sept. 13, 2012).

[9] *See* Mem. & Order [Doc. 39], *Allied Servs.*, No. 3:12-764 (S.D. Ill. Oct. 4, 2012). Judge Herndon denied the parties' motions in all other respects.

4

Novartis copycat cases reached a different conclusion; each ruled that judicial efficiency and the interest of justice favored transferring those cases to the courts handling the first-filed actions. *See* Mem. & Order at 6 [Doc. 36], *Allied Servs. Div. Welfare Fund v. Merck*, No. 3:12-cv-00766 (S.D. Ill. Nov. 9, 2012) ("it would be inefficient for this Court to go over ground the District of New Jersey has already plowed"); Mem. & Order at 6, 7 [Doc. 34], *Allied Servs. v. Novartis*, No. 3:12-cv-00775 (S.D. Ill. Nov. 28, 2012) ("[t]he interest of justice strongly favors a transfer").

### 4. The Path To The Pending Motion For Voluntary Dismissal.

Following rejection of Plaintiffs' bid for an MDL proceeding, the parties agreed to a scheduling order, which was entered by this Court.[10] After Plaintiffs served an amended complaint on October 4, 2012,[11] the Court entered a new scheduling order to which the parties had stipulated.[12] Pursuant to that Order, Pfizer answered the Complaint on October 16, 2012.[13] That same day, Pfizer also moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[14] The Insurers filed their opposition to dismissal on November 30, 2012,[15] and Pfizer submitted its reply brief on December 19, 2012.[16] Just days before Pfizer's reply brief was due, the Insurers moved to voluntarily dismiss the Complaint, offering no explanation other than their preference to litigate this matter in the Southern District of Illinois. (*See* Pls.' Mot. To Voluntarily Dismiss Claims Against Pfizer, Inc. [Doc. 21] at 3.)

---

[10] *See* Joint Stipulation and Proposed Order Extending Defs.' Time To Respond to Compl. [Doc. 6].

[11] *See* Notice of Filing of First Amended Class Action Compl. and Jury Demand Against Pfizer, Inc. [Doc. 8]; *see also* First Amended Class Action Compl. and Jury Demand [Doc. 18].

[12] *See* Joint Stipulation and Proposed Order Extending Time To Respond to Amended Compl. [Doc. 14].

[13] *See* Pfizer Inc.'s Answer and Defenses to Compl. and Demand for Jury Trial [Doc. 15].

[14] *See* Pfizer Inc.'s Mot. To Dismiss [Doc. 16]. Pfizer's motion was inadvertently denominated a "motion to dismiss," rather than a motion for judgment on the pleadings.

[15] *See* Pls.' Mem. of Law in Opposition to Def.'s Mot. To Dismiss [Doc. 20].

[16] *See* Pfizer Inc.'s Reply Mem. of Law in Further Support of Mot. To Dismiss [Doc. 22].

# ARGUMENT

## THE INSURERS' MOTION FOR VOLUNTARY DISMISSAL SHOULD BE DENIED

Because Pfizer has filed its answer, the Insurers cannot voluntarily dismiss this case without a court order. Fed. R. Civ. P. 41(a)(2). "The primary purpose of Rule 41(a)(2) is to protect the interests of the defendant . . . ." *Moore's Federal Practice* § 41.40(5)(a). "The rule is designed 'primarily to prevent voluntary dismissals which unfairly affect the other side . . . .'" *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357 (10th Cir. 1996) (quoting 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2364 at 279 (2d ed. 1994)). Thus, as this Court recently observed, "[t]he most important inquiry . . . [is] whether the defendant will suffer substantial prejudice as a result of a dismissal without prejudice." *S.E.C. v. Compania Internacional Financiera S.A.*, No. 11 Civ. 4904 (JPO), 2012 WL 1856491, at *2 (S.D.N.Y. May 22, 2012) (Oetken, J.). In addressing such motions, courts in this Circuit also

> consider a non-exhaustive list of factors, known as the *Zagano* factors, including (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss. These factors need not be weighted equally, and no single factor is dispositive.

*Id*. (citing, *inter alia*, *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)). All these factors strongly support denial of the Insurers' motion.

### A. Preventing A Ruling On The Pending Dispositive Motion Would Be Highly Prejudicial To Pfizer.

"[A] party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice." *Phillips USA, Inc.*, 77 F.3d at 358; *accord Galasso*, 310 F. Supp. 2d at 572 (S.D.N.Y. 2004); *Tejeda v. Senkowski*, 92 Civ. 3012 (CSH), 1993 U.S. Dist. LEXIS 8166, at *13-14 (S.D.N.Y. June 15, 1993). Accordingly, "[a] motion for a voluntary dismissal should generally be denied when the purpose is to avoid an adverse determination on the merits of the action." *Moore's Federal Practice* § 41.40(7)(b)(v). Where, as here, Plaintiffs have "provided no legitimate justification for their request to dismiss," the

Court should infer that Plaintiffs are "seeking to avoid an adverse decision on their [claims] so that they could sue in another, arguably more favorable forum." *Hamm*, 187 F.3d at 951; *see also Fuhgetaboutit, LLC v. Columbus Police Dep't*, 1:10-CV-207-SA-JAD, 2011 WL 4529665, at *3 (N.D. Miss. Sept. 28, 2011) (concluding that "[p]laintiffs are obviously 'seek[ing] to avoid an imminent adverse ruling'" by seeking a voluntary dismissal) (second alteration in original).

When a defendant files a dispositive motion "prior to [a] motion for voluntary dismissal," the court normally should decide the dispositive motion first, for "if indeed the claim against [the moving defendant] was baseless, [the defendant] should not be subjected to another round of litigation." *Piedmont Resolution, L.L.C. v. Johnston, Rivlin & Foley*, 178 F.R.D. 328, 329 n.1 (D.D.C. 1998). For example, in *DiStefano v. Kinder Morgan, Inc.*, No. 3:10-cv-1028-JPG-SCW, 2011 WL 245583 (S.D. Ill. Jan. 26, 2011), plaintiff filed a motion for voluntary dismissal while defendants' motion to dismiss was pending. The court denied plaintiff's motion and granted defendants' motion to dismiss, explaining that "dismissal without prejudice is inappropriate in light of the merits of the defendants' motion." *Id.* at *1.

Similarly, in *Manti Transportation, Inc. v. Associates Commercial Corp.*, No. 00-CV-6807 (FB), 2002 WL 369807 (E.D.N.Y. Mar. 8, 2002), defendant filed a motion for summary judgment, arguing that plaintiff's contract claims were precluded by the release language in the contract. Plaintiff opposed the motion and also sought voluntary dismissal without prejudice. The court denied plaintiff's motion, explaining that dismissal without prejudice would be "manifestly prejudicial" to the defendant:

> The principle [that a plaintiff cannot avoid an adverse decision on a dispositive motion through voluntary dismissal] is particularly applicable here, where the issue before the Court on the dispositive motion is a clear matter of law. *Implicit in the granting of defendant's summary judgment motion is denial of plaintiff's subsequent withdrawal motion, since dismissal without prejudice would be manifestly prejudicial to defendant.* . . . [I]t appears to the Court that its true motivation in invoking Rule 41(a)(2) was simply to delay the inevitable judgment day. Under the circumstances of this case, the Court will not sanction plaintiff's eleventh-hour stratagem.

*Id.* at *5 (emphasis added); *see also Hamm*, 187 F.3d at 951 (district court properly considered

dispositive motion before addressing motion for voluntary dismissal).

Moreover, seeking to dismiss a claim in order to avoid a potential adverse ruling is a vexatious litigation tactic. *See Corales v. Flagstar Bank, FSB*, No. C10-1922JLR, 2011 WL 1584284, at *2 (W.D. Wash. Apr. 26, 2011) (denying plaintiff's motion for voluntary dismissal, explaining that "'the mere temporary avoidance of a claim dispositive motion is not a legitimate reason to seek dismissal of . . . claims without prejudice; *indeed, the avoidance of an adverse ruling is an abusive reason to seek dismissal'*") (citation omitted) (emphasis added).

The Insurers' conduct in this case is even more egregious than that of the plaintiffs in the precedents cited above. In those cases, the undue prejudice existed because the plaintiffs *could* seek to re-file their defective cases if dismissal without prejudice was allowed. Here, the Insurers already have a "backup case" in the Southern District of Illinois and have written to inform the judge in that case that the motion for voluntary dismissal had been filed. This Court should not countenance such blatantly manipulative tactics.

**B.     The Insurers' Vexatious Forum-Shopping Efforts Should Not Be Condoned.**

Under the *Zagano* analysis, the Insurers' motion should be denied for the additional, independent reason that it is another effort in the forum-shopping strategy Plaintiffs' counsel have pursued throughout this litigation. It is beyond cavil that "it is inappropriate for a plaintiff to use voluntary dismissal as an avenue for seeking a more favorable forum." *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1214 (8th Cir. 2011); *see also Cahalan v. Rohan*, 423 F.3d 815, 818 (8th Cir. 2005). Improper forum-shopping "includes those situations 'where counsel files multiple petitions, dismissing those assigned to a judge likely to render an unfavorable' determination on the merits." *Steward v. Dow Corning Corp.*, No. 92-1105-K, 1992 WL 75195, at *1 (D. Kan. Mar. 13, 1992) (citation omitted); *accord Vaqueria Tres Monjitas, Inc. v. Rivera Cubano*, 341 F. Supp. 2d 69, 72 (D.P.R. 2004) ("*Vaqueria*"). Such "attempts to manipulate the random case assignment process are subject to universal condemnation." *United States v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D. Utah 1999). "[A] court faced with judge-shopping has the authority to act to preserve the integrity and control of its

docket." *Vaqueria*, 341 F. Supp. 2d at 72; *accord Murray v. Sevier*, No. 92-1073-K, 1992 WL 75212, at *1 (D. Kan. Mar. 13, 1992).

Here, the Insurers admit that they seek dismissal so they can litigate their claims in what they apparently believe would be a more favorable forum. (Pls.' Mot. at 3 ("Third party payors suing Pfizer will litigate [in the Southern District of Illinois].").) Filing multiple duplicative actions in various jurisdictions is, by definition, vexatious. *See, e.g.*, 28 U.S.C. § 1927 (counsel who "unreasonably and vexatiously" "multiplies the proceedings in any case" may be liable for excess costs). And seeking to dismiss claims without prejudice in order to litigate in another, preferred federal district is, by definition, forum-shopping.

## C. The Insurers Have Not Proffered A Legitimate Justification For Dismissal.

On a key *Zagano* factor, the Insurers proffer no reasonable explanation as to why they are seeking to dismiss this case – which is pending in a Court a few blocks from both of the Insurers' respective headquarters – and litigate their claims in Illinois, a forum with no apparent connection to the Insurers or to Pfizer, and a forum in which the two other copycat cases against Merck and Novartis have already been transferred to more appropriate venues. Their vague reference to judicial economy (*see* Pls.' Mot. [Doc. 21] at 2-3) is nonsensical. Had the Insurers truly been concerned with judicial economy, they would have persuaded the plaintiff's counsel in *Allied Services*, with whom they are clearly coordinating, to support Pfizer's proposal to transfer the *Allied Services* action to this Court.

Not only is the Insurers' allusion to judicial efficiency patently disingenuous, nothing could be less efficient than dismissing this case and starting from scratch in Illinois. In fact, plaintiff in the Illinois action made this point repeatedly when urging Judge Herndon to issue a stay pending the outcome of this case:

> [A] stay of this case [in Illinois] pending the outcome of the American Federation action is proper under the applicable case law. It is Plaintiff's understanding that motions to dismiss are forthcoming in the New York action and *a stay pending substantive briefing on many of the factual and legal issues lodged in both complaints would best serve the parties [sic] interests in this litigation.*

(Pl.'s Opp'n [Doc. 36] at 11, *Allied Servs.*, No. 3:12-cv-00764 (S.D. Ill. Oct. 2, 2012).) Allied

9

Services made clear that these common factual and legal issues "include the viability of Plaintiffs' federal antitrust claims and the appropriateness of allowing these claims to proceed on behalf of a nationwide class." (*Id.* at 12.)

Similarly, Allied Services argued that having this Court rule on Pfizer's anticipated motions was essential for judicial comity and economy:

> Granting a stay pending a decision in the American Federation case would in fact benefit the Court and the parties *because it reduces the possibility of inconsistent rulings on the same legal issues and alleviates the burden on the court's time and the parties' financial resources to proceed simultaneously in two federal courts.*

(*Id.* at 13 (emphasis added).) According to Allied Services, "the [Illinois] Court and the parties would greatly benefit from the reasoned analysis of Judge Oetken in the Southern District of New York" regarding the validity of plaintiff's RICO and antitrust claims. (*Id.* at 12.) Now that briefing on Pfizer's dismissal motion is complete, the parties' interest in obtaining a ruling is even stronger. The Insurers make no attempt to explain this abrupt about-face.

Given that the Insurers are not seeking to dismiss the parallel action in this Court against BMS, which raises many of the same legal issues and is also the subject of a pending dismissal motion, "the possibility of inconsistent ruling[s] on the same legal issues" is still a relevant consideration, yet it is not even alluded to in the Insurers' motion.[17] Plaintiffs also fail to explain why it suddenly makes sense to have two different judges deciding the same legal issues.

### D. The Insurers Were Dilatory In Bringing Their Motion.

Contrary to another *Zagano* consideration, the Insurers were **not** diligent in bringing this motion. The JPML denied the Insurers' motion for an MDL transfer on August 2, 2012. The Insurers could have moved to dismiss at that time. They did not. Instead, they filed an Amended Complaint and stipulated to a revised schedule for proceeding, which was entered by the Court.

---

[17] The parties in *BMS* and in this action coordinated the briefing schedules so that briefing on the motions to dismiss would be completed at approximately the same time. (*See* Joint Stipulation and Proposed Order Extending Time To Respond to Amended Complaint [Doc. 14] at 1-2 (noting that the proposed deadline for Pfizer's reply brief in support of its motion to dismiss would remain close to completion of briefing on BMS's motion to dismiss).)

10

Pursuant to that schedule, Pfizer answered the Amended Complaint and filed a Motion for Judgment on the Pleadings, to which the Insurers responded. At no time in this process did the Insurers offer any hint that they would be seeking dismissal.

### E. This Action Is Not "In Its Infancy."

Another *Zagano* factor favoring denial of Insurers' motion is "the extent to which the suit has progressed." *Compania Internacional Financiera*, 2012 WL 1856491, at *2. According to the Insurers, this case "is in its infancy." (Pls.' Mot. [Doc. 21] at 3.) In reality, Pfizer has been actively litigating this matter for almost a year. To be sure, much of the activity during that period has involved responding to Plaintiffs' various forum-manipulation strategies. But after refuting those efforts, Pfizer has finally secured the opportunity to test the legal viability of the Insurers' claims, as it is entitled to do under Federal Rule of Civil Procedure 12(c). As the Supreme Court has observed, a complaint that does not allege facts supporting plausible grounds for relief should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations and internal quotation marks omitted). And a plaintiff with a groundless claim should not "be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Id.* (citations and internal quotation marks omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (observing that "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). Particularly given the procedural gauntlet Pfizer has had to run to reach this stage, it would be manifestly unfair to deny Pfizer a prompt ruling on whether its position that the Insurers' complaint does not state a claim upon which relief can be granted is correct.

*     *     *

In sum, all relevant considerations favor denial of voluntary dismissal in this instance.

11

## CONCLUSION

For all the reasons set forth above, the Insurers' request for voluntary dismissal should be denied.

Dated: New York, New York
       December 27, 2012

Respectfully submitted,

By: /s/ Sheila L. Birnbaum
Sheila L. Birnbaum
Katherine Armstrong
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel.: (212) 735-3000
Fax: (212) 735-2000
E-mail: Sheila.Birnbaum@skadden.com
E-mail: Katherine.Armstrong@skadden.com

John H. Beisner (admitted PHV)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Tel.: (202) 371-7000
Fax: (202) 393-5760
E-mail: John.Beisner@skadden.com

*Counsel for Defendant Pfizer Inc.*